IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

SHEILA D. MEACHAM,                    *
                                      *
        Plaintiff,                    *
                                      *
vs.                                   *        Civil Action 05-00619-WS-B
                                      *
MICHAEL J. ASTRUE,[1]                 *
Commissioner of Social Security,      *
                                      *
        Defendant.                    *

## REPORT AND RECOMMENDATION

Plaintiff Sheila D. Meacham ("Plaintiff") brings this action seeking judicial review of a final decision of the Commissioner of Social Security denying her claim for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 401 et seq. and 1381 et seq.  This action was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  Oral argument was held on October 27, 2006.  Upon consideration of the administrative record, as well as the memoranda and oral argument of the parties, it is **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED.**

## I.    Procedural History

Plaintiff protectively filed an application for benefits on April 25, 2003, alleging that she has been disabled since April 2003 due to heart problems (coronary artery disease and heart attack), hypertension, spina bifida[2] and arthritis.  (Tr. 79-82, 102-103, 257-269).  Plaintiff's applications

---

[1]On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security.  Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, he has been substituted as the Defendant in this suit.  No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2]Spina bifida is a birth defect in which the bones of the spine (vertebrae) do not form properly around the spinal cord. See www.webmd.com (Last visited 3/12/07).

were denied initially and upon reconsideration.  (Id. at 46-47, 49-53, 270-276).  Plaintiff then filed

a timely Request for Hearing before an Administrative Law Judge ("ALJ").  (Id. at 42, 54).  On June

22, 2004, an administrative hearing was held before Administrative Law Judge James D. Smith

("ALJ" or "ALJ Smith"), which was attended by Plaintiff, her representative and a vocational expert.

(Id. at 328-343).  On September 24, 2004, ALJ Smith issued an unfavorable decision, finding that

Plaintiff is not disabled.  (Id. at 22-36).  Plaintiff sought review of the ALJ's decision, and on

October 4, 2005, the Appeals Council ("AC") denied review; thus, the ALJ's decision became the

final decision of the Commissioner of Social Security.  (Id. at 4-8, 20-21).  The parties agree that

this case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. §

405(g).

## II.    Background Facts

Plaintiff was born on June 25, 1952 and was 51 years old as of the administrative hearing.

(Tr. 27, 100, 330).  Plaintiff has a 12th grade education and past relevant work ("PRW") experience

as a courier, clerk in the construction industry, expeditor, tool room clerk, and hand packager.  (Id.

at 34, 97–99, 103-104, 107, 123-141, 331-332).  At the June 22, 2004 hearing, Plaintiff testified that

she has not worked since suffering a heart attack in April 2003.  (Id. at 333).  Plaintiff testified that

she has an irregular heart beat, chest pains, and swelling in her hands, legs and feet.  (Id. at 333-

335).  Plaintiff also testified that she has spina bifida, rheumatoid arthritis and hypertension that is

difficult to control.  (Id. at 334-337).  Plaintiff further reported that she has pain in her hips/legs,

back and tail bone, and as a result, has difficult sleeping at night.  (Id. at 335-336).  According to

Plaintiff, she also has problems with her knees, which makes it difficult for her to do a lot of

standing and walking.  (Tr. 337).  As for daily activities, Plaintiff reported that she spends her day

trying to clean house and cook; however, she is unable to perform all of the activities that she once

did because she "gets out of breath easily." (Id. at 337-338). Plaintiff's medications have included

Nitroglycerine/Nitrolingual spray, Flexeril, Klor-Con, Toprol, Furosemide, Aspirin, Plavix, Norvasc,

Imdur, Xanax, Ocodone, Alprazolam, Isosorbide, Lotrel, Premarin, Hyzaar, Vioxx, Percogesic and

Temoril. (Id. at 106, 119, 148-149, 156, 161, 167, 170, 178, 190, 200).

## III.    Issues on Appeal

A.     Whether the ALJ erred in finding that Plaintiff's rheumatoid arthritis is a nonsevere
       impairment?

B.     Whether the ALJ erred in finding that Plaintiff could perform light work by failing to assign
       controlling weight to the findings of her treating physicians?

C.     Whether the ALJ erred by failing to find that Plaintiff is disabled under Rule 201.12 of the
       Medical-Vocational Guidelines?

## IV.    Analysis

### A.      Standard of Review

In reviewing claims brought under the Act, this Court's role is a limited one. This Court's

review is limited to determining 1) whether the decision of the Secretary is supported by substantial

evidence, and 2) whether the correct legal standards were applied. Martin v. Sullivan, 894 F.2d

1520, 1529 (11th Cir. 1990).[3] A court may not decide the facts anew, reweigh the evidence, or

substitute its judgment for that of the Commissioner. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th

Cir. 1986). The Commissioner's findings of fact must be affirmed if they are based upon substantial

evidence. Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Bloodsworth v. Heckler, 703

F.2d 1233, 1239 (11th Cir. 1983) (finding that substantial evidence is defined as "more than a

---

[3]This Court's review of the Commissioner's application of legal principles is plenary. Walker v. Bowen,
826 F.2d 996, 999 (11th Cir. 1987).

scintilla but less than a preponderance," and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion[]").  In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision.  Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986); Short v. Apfel, 1999 U.S. DIST. LEXIS 10163 (S.D. Ala. 1999).

### B.    Discussion

An individual who applies for Social Security disability benefits must prove her disability. 20 C.F.R. §§ 404.1512, 416.912.  Disability is defined as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).  The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven her disability.  20 C.F.R. §§ 404.1520, 416.920.[4]  See, e.g., Crayton v. Callahan, 120 F.3d 1217, 1219 (11th Cir. 1997).

In the case sub judice, the ALJ found that Plaintiff had not engaged in SGA since her alleged

---

[4]The claimant must first prove that he or she has not engaged in substantial gainful activity.  The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments. If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience.  If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove inability to perform their past relevant work.  Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986).  In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; (4) the claimant's age, education and work history.  Id.  Once a claimant meets this burden, it becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work history.  Sryock v. Heckler, 764 F.2d 834 (11th Cir. 1985).  If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled.  Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999).  See also Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

onset of disability date of April 2003. (Tr. 25-36). The ALJ concluded that while Plaintiff has the severe impairments of status post inferior myocardial infarction with coronary vasospam, coronary artery disease and hypertension, they do not meet or equal one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Id.) The ALJ determined that Plaintiff's subjective complaints were not credible and that she retains the RFC to perform light work; thus, she can return to her PRW as a courier and construction industry clerk. (Id.) Accordingly, the ALJ concluded that Plaintiff is not disabled under the meaning of the Act. (Id.)

Based upon a review of the record, the undersigned finds that substantial evidence of record supports the ALJ's decision. The relevant record reveals that Plaintiff was treated by Lisa Burch, M.D. ("Dr. Burch") from 1996 through 2004. (Tr. 156, 159-160, 163-165, 168, 199-226, 248-249, 294). Plaintiff was treated for a variety of ailments including lower back discomfort, chest pains, elevated blood pressure, sleeping difficulties, headaches, swelling, a knot under her neck, and pain in her tail bone. (Id.). In 1996, approximately 7 years before Plaintiff's alleged disability onset date, an x-ray of her lumbar spine revealed spina bifida involving the L5 and S1. (Id. at 213). Plaintiff's chest, PA and lateral x-rays revealed that her bones and soft tissues were normal, her lung fields were clear, and her heart and mediastinum were normal. (Id. at 214). Later comparison x-rays revealed no change. (Id. at 211). During the course of treatment by Dr. Burch, Plaintiff was diagnosed with hypertension, lumbar strain, coronary spasm, arthralgias, renal insufficiency, rheumatoid arthritis, depression, anxiety, and a goiter with LS strain/DDP. (Id. at 156, 159-160, 163-165, 168, 226, 248-249).

On May 14, 2004, Dr. Burch prepared a Physical Capacities Evaluation, finding that Plaintiff can continuously sit for 8 hours at one time and for up to 8 hours in a 8 hour workday;

5

stand/walk for 2 hours at a time and for up to 2 hours in an 8 hour workday; occasionally lift up to 10 pounds; occasionally carry up to 5 pounds; use both of her hands for repetitive action such as simple grasping and pushing/pulling arm controls, but not for fine manipulation; has no restrictions on the ability to use her feet for repetitive action (pushing/pulling leg controls); cannot squat, crawl or climb; can occasionally bend and reach; is moderately restricted from activities involving unprotected heights; is mildly restricted from activities involving moving machinery and driving automotive equipment; is totally restricted from activities involving exposure to marked changes in temperature and humidity and exposure to dust, fumes and gases; and cannot work 8 hours per day, 40 hours per week, on a sustained basis, with these limitations.  (Tr. 249).

On May 15, 2004, Dr. Burch prepared a "to whom it may concern" letter stating that Plaintiff's arthritic complaints involved her hands, feet, knees and lower back, and that she reported occasionally taking narcotics for pain relief.  (Id. at 248).  Dr. Burch stated that as the narcotics caused some degree of sedation, Plaintiff was unable to operate equipment, climb or be around unprotected heights during that time.  (Id.)  She further stated that because of her joint pain, she was given the limitations detailed on the PCE.  (Id.)  Additionally, she opined that while Plaintiff had a good prognosis as to her coronary artery disease, her rheumatoid arthritis prognosis was "really unknown as this often worsens and becomes more debilitating as the disease progress despite treatment." (Id.)

On April 7, 2003, upon referral from Dr. Burch for chest pain consistent with angina, Plaintiff was hospitalized for an inferior anterior heart attack.  (Id. at 151-168).  During the course of her hospitalization, Plaintiff's heart rhythm remained normal and she had no further chest pain. (Tr. 151-168).  She underwent a left heart catheterization which showed an ejection fraction of 45-

50% and the right coronary artery disease was very small in caliber and diffusely diseased; Mir Wail Hashimi, M.D. ("Dr. Hashimi") recommended an angioplasty if she had recurrent chest pain. (Id.) Plaintiff was assessed with hypertension and being a smoker. (Id. at 159, 162). She had a normal chest x-ray. (Id. at 168). She was diagnosed with reduced left ventricular systolic function with evidence for inferoapical infarction, coronary disease involving the distal portion of the left anterior descending in a small caliber segment, and coronary disease involving the obtuse marginal. (Id. at 151-152, 154-155).

On April 8, 2003, Gerry Phillips, M.D. ("Dr. Phillips") performed an echocardiogram and assessed Plaintiff with a left ventricular ejection fraction of 60% with grossly normal wall motion, and some "very mild" fibrocalcific changes but no severe stenosis of any structure. (Id. at 153). Dr. Phillips noted that Plaintiff, who was a smoker with a 25 year ½ pack per day habit, did not need angioplasty. (Tr. 161-162, 166-167). She was instead treated with Tenormine, Plavix and Aspirin. (Id.) From May 12-14, 2003, Plaintiff was hospitalized again for chest discomfort complaints. (Id. at 169-177). A second left heart catheterization, selective coronary and left ventricular angiography were performed. (Id.) They revealed normal coronaries and an ejection fraction of 50%. (Id. at 170). Dr. Phillips opined that Plaintiff had suffered a coronary spasm; he assessed her with a severe coronary spasm, smoking and hypertension. (Id.) He instructed her to stop smoking and to stay away from all cigarette smoke, since this could produce spasms. (Tr. 170). She was discharged home with medications. (Id.)

On August 30, 2003, Plaintiff underwent a physical consultation with Ilyas A. Shaikh ("Dr. Shaikh") at the State Agency's request, at which time she reported that her chief complaints were shortness of breath and joint stiffness, and that while medication had been helpful to some extent,

she still had hand/knee stiffness, lower back pain and arthritis.  (Id. at 178-181).  She reported that she could not bend or get up from a sitting position and that she had been diagnosed with rheumatoid arthritis.  (Id. at 178).  Her physical examination revealed a BP 130/90; that she could move all four extremities; she had no edema or crepitus of the lower extremities; her motor strength was symmetrical and 5/5 in upper and lower extremities; she had no rigidity or spasticity; she had normal fine motor skills; her coordination was intact; her grip strength was 5/5 and bilaterally symmetrical; and her deep tendon reflexes were 2+ bilaterally.  (Id. at 178-181).  She could also stand on her heels/toes, had a normal tandem gait and negative straight leg raising tests.  (Id. at 180).  Plaintiff did have difficulty, with squatting, "probably due to poor effort," and she was not able to touch her toes.  (Tr. 180).  She had a mild range of motion deficit in her hips, knees, cervical spine, lumbar spine, and shoulder as well.  (Id. at 180-181).  Dr. Shaikh assessed Plaintiff with a history of coronary artery disease and hypertension; he noted that she remains at risk for future cardiac problems due to hypertension, her family history of coronary artery disease and her previous myocardial infarction even though she stated that she had quit smoking.  (Id. at 180).

On September 2, 2003, Gino DiVittorio, M.D. ("Dr. DiVittorio") evaluated Plaintiff for rheumatoid arthritis at Dr. Burch's request.  (Id. at 182-190).  Plaintiff reported having pain and swelling in her hands, knees and feet for the past 4 years as well as low back pain, which has been gradually getting worse.  (Id. at 183-184, 187-188).  Her physical exam revealed a Herberden's

node[5] in the fifth DIP[6] with some tenderness in most PIPs[7] of both hands and in the left temporomandibular joint;[8] tender points in the trochanters;[9] no inflammation of lubricating fluid of joints; her hands and feet x-rays were normal; she had a positive rheumatoid factor of 40 IU/ml;[10] her ANA panel was negative; and she had no sicca symptoms,[11] Raynaud's, serositis,[12] skin rash, seizures, or unexplained fevers.  (Id. at 183).  Dr. DiVittorio diagnosed her with early osteoarthritis, probable low grade rheumatoid arthritis, myalgia, coronary artery disease and hypertension.  (Tr. 183).  He started her on Celebrex 200 mg qd and Flexeril 5 mg hs, and scheduled a follow-up in 1 month; Plaintiff did not return.  (Id.)

On October 6, 2003, State Agency medical consultant Van B. Hayne, Jr., M.D. ("Dr. Hayne") reviewed Plaintiff's records and completed a Physical Residual Functional Capacity Assessment, for her CAD, hypertension and spina bifida, at which time he found that she can

---

[5]A Heberden's node is an area of bony enlargement of the smallest joint at the end of the fingers which represents bone spurring and swollen tissues that occur because of the inflammation of degenerated cartilage.  See www.medicinenet.com (Last visited 3.12.07).

[6]Distal interphalangeal joint of the finger - the synovial joints between the middle and distal phalanges of the fingers and toes.  See Stedmans 214890, Stedmans Medical Dictionary, Joint (27th ed. 2000).

[7]Proximal interphalangeal joint of the finger.  Id.

[8]The synovial articulation between the head of the mandible and the mandibular fossa and articular tubercle of the temporal bone; a fibrocartilaginous articular disk divides the joint into two cavities.  Id.

[9]Either of two bony processes on the upper part of the femur.  See www.answers.com (Last visited 3/12/07).

[10]Rheumatoid factor (RF) blood test measures the amount of the RF antibody present in most people with rheumatoid arthritis. Although rheumatoid arthritis is the most common reason for a rheumatoid factor (RF) level greater than 23, there are other reasons for a positive test. See www.webmd.com (Last visited 3/12/07).

[11]Including dry eyes and mouth sometimes associated with rheumatoid arthritis. See www.answers.com (Last visited 3/12/07).

[12]Raynaud's is a condition in which blood flow to the surface tissue of the hands and feet is temporarily decreased, usually as an overresponse to cold temperatures.  See www.webmd.com (last visited 3/12/07).

occasionally lift/carry up to 20 pounds; frequently lift/carry up to 10 pounds; stand, walk and sit, with normal breaks, for 6 hours in an 8 hour workday; has unlimited push/pull abilities (other than to lift/carry); occasionally climb ramps and stairs; occasionally stoop and crouch; never climb ladders, ropes or scaffolds; frequently balance, kneel and crawl; has no manipulative, visual or communicative limitations; and has the environmental limitation of having to avoid concentrated exposure to extreme cold and heat.  (Id. at 191-198).  Dr. Hayne noted that Plaintiff receives treatment and takes medication to control her conditions, and that while her file support some restrictions, she is capable of performing work tasks within the guidelines of the RFC and her statements regarding functional restrictions due to her condition are considered partially credible. (Id. at 196).

During 2003-2004, Plaintiff was treated at Cardiology Associates, by William Hayes, M.D. ("Dr. Hayes") and others.  (Id. at 227-246, 250-256).  Plaintiff reported that her heart had been beating hard and that she had chest tightness, palpitations, heart skipping, shortness of breath, headaches, dizziness, and pain when lying down.  (Id.)  She was prescribed a variety of medications including Xanax, Plavix, Asa, Imdur, Norvasc and Toprol.  (Tr. 242).  Testing revealed that her blood pressure was elevated; thus her blood pressure medicine was adjusted.  (Id. at 227-246, 250-256).  Plaintiff reported in August 2003 that the Xanax helped her "heart jumping."  (Id. at 243). Treatment notes from December 2003 reflect that Plaintiff was assessed with normal perfusion, and a cardiolite perfusion test revealed a somewhat technically limited study due to gut activity; however, there was no evidence to suggest significant ischemia or infarction.  (Id. at 232-235).  The notes also reflect mild inferior attenuation, probably artifact or soft tissue and an ejection fraction of 64% with normal wall motion and thickening throughout.  (Id. at 234).  A treadmill stress test

10

revealed that Plaintiff is non-ischemic but that her functional capacity could not be assessed secondary to the test being a submaximal stress test.  (Id. at 235).  Plaintiff's heart testing revealed that her predominant rhythm is sinus rhythm.  (Tr. 232).  Her heart rate varied from 56-127 beats per minute with an average heart rate of 79 beats per minute.  (Id.)  Infrequent atrial ectopy was noted.  (Id.)  In January 2004, Plaintiff was diagnosed with diagnosed with hypertension, obesity, mild coronary disease and premature ventricular contractions.  (Id. at 228-230).  No edema was noted.  (Id.)  She was advised to not increase her SCD risk, to control her blood pressure with Norvasc to Lotrel, and to lose weight and exercise.  (Id.)

On April 19, 2004, Dr. Hayes completed a Physical Capacities Evaluation in which he found that Plaintiff can sit, stand and walk for 4 hours at a time and for up to 4 hours per 8 hour workday; occasionally lift/carry up to 20 pounds; has no limitations with the use of her hands and feet for repetitive action (simple grasping, pushing/pulling arm controls, fine manipulation); can occasionally bend and squat; cannot crawl, climb or reach; has complete restrictions from activities involving exposure to marked changes in temperature and humidity and exposure to dust, fumes, gases; and has a mild restriction from activities around unprotected heights, being around moving machinery and operating automotive equipment.  (Tr. 245).  Dr. Hayes noted that the question of whether Plaintiff can work 8 hours per day, 40 hours per week on a sustained basis with the limitations, was "not applicable."  (Id.)

On that same date, Dr. Hayes completed a Heart Questionnaire in which he found that Plaintiff has mild coronary artery disease, coronary vasospam and premature ventricular contractions, as supported by an April 2003 left heart catheterization.  (Id. at 246).  According to Dr. Hayes, Plaintiff's impairment fell under the Class II classification of the New York Heart Association

classification system; and her condition posed only a slight limitation on her ability to perform work activity. (Id.) Dr. Hayes did not render an opinion on whether she could maintain work activity for an 8 hour workday, again finding it "not applicable." (Id.)

### 1.    Whether the ALJ erred in finding that Plaintiff's rheumatoid arthritis is a nonsevere impairment?

Plaintiff contends that the ALJ erred by finding that her physical impairment of rheumatoid arthritis[13] is a nonsevere impairment. In support of her contention, Plaintiff relies upon both Dr. Burch's May 15, 2004 narrative letter (wherein she concluded that Plaintiff has a rheumatoid arthritis diagnosis which results in work-related functional limitations from joint pain/stiffness) and Dr. Burch's May 14, 2004 Physical Capacities Evaluation (wherein she concluded that, due to joint pain, Plaintiff cannot work 8 hours per day, 40 hours per week, on a sustained basis).

At the second step of the sequential evaluation process, the ALJ is to "consider the medical severity of [the claimant's] impairment(s)." 20 C.F.R. § 404.1520(a)(4)(ii). A "severe" impairment is one which "significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520©). The Eleventh Circuit has held that a claimant's impairment may be considered "not severe" only if it is a slight abnormality which has such a minimal effect on he or she, that it is not expected to interfere with the ability to work, regardless of age, education or work experience. See, e.g., Brady v. Heckler, 724 F.2d 914, 922 (11th Cir. 1984). In McDaniel v. Bowen, 800 F.2d 1026 (11th Cir. 1986), the Eleventh Circuit clarified the severity determination:

---

[13]Arthritis is a general term that describes inflammation in joints. That inflammation is characterized by redness, warmth, swelling and pain. Rheumatoid arthritis is a type of chronic arthritis that occurs in joints on both sides of the body (such as hands, wrists or knees). This symmetry helps distinguish rheumatoid arthritis from other types of arthritis. In addition to affecting the joints, rheumatoid arthritis may occasionally affect the skin, eyes, lungs, heart, blood, nerves or kidneys. See www.webmd.com (Last visited 3/12/07).

> [a]t step two of § 404.1520 and § 416.920 a claimant's impairment is determined to be either severe or not severe.  Step two is a threshold inquiry. It allows only claims based on the most trivial impairments to be rejected. The claimant's burden at step two is mild. An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience. Claimant need show only that her impairment is not so slight and its effect is not so minimal.

Id. at 1031.  If an impairment causes only mild effects on a claimant's ability to work, or is amenable to medical treatment, it may be not severe.  In Bridges v. Bowen, 815 F.2d 622, 625 (11th Cir. 1987). Thus, a claimant bears the burden of proving that an impairment is severe and more than a mere slight abnormality.  Brady, 724 F.2d at 920.[14]

In his decision, ALJ Smith found, in relevant part, as follows with regard to Plaintiff's rheumatoid arthritis:

> The impairments of . . . rheumatoid arthritis have been alleged as possible severe impairments. However, there is no objective medical evidence to support the conclusion that these alleged impairments entailed significant work-related limitations for a continuous period of 12 months during the relevant period under consideration . . . .
>
> With respect to the claimant's rheumatoid arthritis, the Administrative Law Judge acknowledges that the claimant had a positive rheumatoid factor test, however, her ANA profile was normal and there are no clinical notations of joint swelling, joint deformity, muscle atrophy, gait abnormality, or substantial limitation of range of motion. Furthermore, the rheumatologist, Dr. DiVittorio, stated that the claimant had only "probable low grade rheumatoid arthritis" which does not necessarily equate to a definitive diagnosis. Consequently, the Administrative law Judge does not find that the claimant's allegations with respect to the above physical problems have been established as causing any actual 12-month functional work-related limitation, and that these alleged impairments are not severe.  (20 CFR Sections 404.1520, 404.1521, 404.1522, 416,920, 416.921, and 416.922).
>
>             * * *
>
> Although the claimant has alleged that she has pain in her back, knees, feet and hands, as well as swelling in her feet, legs, and hands, physical examinations have failed to document consistent clinical findings of significant loss of range of motion, muscle

---

[14] See also SSR 96-3p Titles II and XVI: Considering Allegations of Pain and Other Symptoms in Determining Whether a Medically Determinable Impairment Is Severe, 1996 WL 374181, *1-2.

spasms, muscle weakness, muscle atrophy, joint deformity, joint swelling, or sensory
or motor disruption, and the disparity between the objective medical evidence in the
record and the claimant's symptomatic allegations is considerable.

(Tr. 31-33).

The undersigned acknowledges that a diagnosis, standing alone, is insufficient for a finding

that an impairment is severe, particularly when evidence of record does not support such a finding.

Here, a review of the ALJ's decision reveals that his finding, that Plaintiff's rheumatoid arthritis was

a nonsevere impairment, is supported by substantial evidence of record.  The record reveals that since

2003, Plaintiff has not received consistent or aggressive treatment for pain specifically associated

with, or attributable to, rheumatoid arthritis.  Indeed, it is notable that Dr. Burch, Plaintiff's treating

physician who initially diagnosed her with rheumatoid arthritis in June 2003 due to a blood test score

which was positive for the "RA Factor," did not address this diagnosis again until May 2004, when

she wrote a "to whom it may concern" letter stating that due to Plaintiff's arthritic joint pain, Plaintiff

had the limitations detailed on the Physical Capacities Evaluation (that she can only stand/walk for

2 hours).[15]  See supra.  Interestingly, in the "To Whom it May Concern" letter, Dr. Burch

acknowledged that Plaintiff's rheumatoid arthritis prognosis was "really unknown," as it "often

worsens and becomes more debilitating as the disease progress despite treatment."  Id.  Additionally,

a searching review of Dr. Burch's treatment notes fails to reveal any clinical examination findings

indicating that Plaintiff's arthritis caused severe pain.  Id.  Instead, the notes reflect that Plaintiff only

used narcotic pain medication "occasionally."  Id.  Moreover, in Dr. Burch's final treatment note,

stated September 2004, Dr. Burch concluded that Plaintiff was in no distress and that she had a

---

[15]For those reasons which will be discussed in greater detail herein, however, Dr. Burch's Physical
Capacities Evaluation findings were not due controlling weight because they were inconsistent with her treatment
records.

normal physical exam.  Id.

Also significant is the fact that Dr. DiVittorio – the rheumatologist who Dr. Burch referred Plaintiff to in September 2003 for her initial assessment of the rheumatoid arthritis diagnosis – found that Plaintiff only had a joint nodule and some tenderness, but that she had no "sicca symptoms," no inflammation, and normal x-rays.  See supra.  He opined that at that point, Plaintiff's rheumatoid arthritis was at most "low grade" (i.e., not effecting her abilities to perform work-related functions). Id.  Moreover, while the undersigned is cognizant that Plaintiff's rheumatoid arthritis may exacerbate or aggravate in the future, at the time of the ALJ's September 24, 2004 decision, the record before the ALJ did not indicate that it had done so.[16]  Further, while Plaintiff has alleged that she has pain in her back, knees, feet, and hands, as well as swelling in her feet, legs, and hands, physical examinations have failed to document consistent clinical findings of a significant loss of range of motion, muscle spasms, muscle weakness, muscle atrophy, joint deformity, joint swelling, or sensory or motor disruption.  See supra.  The disparity between the objective medical evidence in the record and the claimant's symptomatic allegations is considerable.  Accordingly, the ALJ did not err in finding that Plaintiff's arthritis was not a severe impairment.  See, e.g., Bridges, 815 F.2d at 625; Brady, 724 F.2d at 922.

    **2.**    **Whether the ALJ erred by finding that Plaintiff could perform light work by failing to assign controlling weight to the findings of her treating**

---

[16]The undersigned recognizes that Plaintiff presented records to the Appeals Council which were not before the ALJ.  Because those records were not before the ALJ, and because they do not address Plaintiff's condition at the time in issue – other than perhaps one record – they are not material.  Nevertheless, even if the undersigned were to consider that one record – namely Dr. Burch's September 3, 2004 examination of Plaintiff which was conducted just a few weeks before the ALJ's decision – that record reveals that Plaintiff presented with complaints of back pain at night and that she was experiencing pain in her tail bone pain after prolonged sitting. (Tr. 294).  Dr. Burch's examination concluded, however, that Plaintiff's physical examination revealed that she had a full range of motion, normal muscle tone and no edema, and that she was in no distress and had no anxiety.  (Id.)  In this sense, a comparison of Dr. DiVittorio's September 2003 findings with Dr. Burch's September 2004 findings reveals that Plaintiff's rheumatoid arthritis condition was essentially unchanged during that time period.

**physicians**?

Plaintiff contends that the ALJ erred by finding that she retains the RFC to perform light work because he rendered his own medical findings rather than assigned controlling weight to Plaintiffs' treating physicians, who concluded that she cannot perform light work.[17]  Specifically, Plaintiff contends that the ALJ erred by failing to assign controlling weight to the opinions of her treating physicians Drs. Hayes and Burch – who found that she is unable to perform light work due to her cardiac condition and arthritic pain – opinions which were well supported and consistent with the record.

Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise.  See, e.g., Lewis v. Callahan, 125 F.3d 1436, 1439-1441 (11th Cir. 1997); Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991); Sabo v. Commissioner of Social Security, 955 F. Supp. 1456, 1462 (M.D. Fla. 1996); 20 C.F.R. § 404.1527(d).  See also Johnson v. Barnhart, 2005 WL 1414406, *2 (11th Cir. Jun. 17, 2005); and Wind v. Barnhart, 2005 WL 1317040, *6 (11th Cir. Jun. 2, 2005) (citing to Crawford v. Comm'r of Social Security, 363 F.3d 1155, 1159 (11th Cir. 2004)).  Such "good cause" exists where: 1) the opinion was not bolstered by the evidence; 2) the evidence supported a contrary finding; or 3) opinion was conclusory or inconsistent with the doctor's own medical records.  Johnson, 2005 WL 1414406, *2; Wind, 2005 WL 1317040, *6.  "The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error[;]" likewise, he commits error if he substitutes his own uninformed medical evaluations for those of a claimant's treating physicians absent good cause.  Id.  And it is the ALJ's duty, as finder of fact, to choose

---

[17]Light work involves sitting 2 hours per day and walking or standing for 6 hours per day, and lifting no more than 20 pounds at one time.  20 C.F.R. §§ 404.1567(b), 416.967(b).

between conflicting evidence and he may reject the opinion of any physician when the evidence supports a finding to the contrary.  Id. (citing to Landry v. Heckler, 782 F.2d 1551, 1554 (11th Cir. 1986) and Bloodsworth, 703 F.2d at 1240).[18]

In his decision, the ALJ found that Plaintiff retains the RFC to perform light work, and in so doing, discussed Drs. Hayes and Burch's opinions, as follows:

> The Administrative Law Judge recognizes that 20 CFR Sections 404.1527(d)(2) and 416.927(d)(2) and Social Security Ruling 96-2p require that a treating source's medical opinion on the nature and severity of a claimant's impairments must be given controlling weight if it is well-supported by medically acceptable clinical and laboratory techniques and is not inconsistent with other substantial evidence in the record. However, **in the present case, the restriction of sitting for only four hours during an eight hour workday and the postural and non-exertional limitations Dr. Hayes assigned the claimant in the PCE form cannot be afforded any significant evidentiary weight because they are inconsistent with the other opinions in the PCE form, inconsistent with his opinion in the Heart Questionnaire that the claimant has a Class II functional classification and has only a "slight" degree of impairment in her ability to perform work activity, and they are further unsupported by objective diagnostic evidence or clinical examination findings. Dr. Hayes offered no objective medical basis for restricting the claimant to sitting for no more than four hours during an eight hour workday and a careful review of his treatment notes, as well as those of Dr. Burch, reveal no such support**. In fact . . . Dr. Burch opined in a PCE form that she completed in May, 2004 that the claimant could continuously sit for eight hours a day . . . . It is also inconsistent for Dr. Hayes to restrict the claimant to no reaching but simultaneously indicate that the has the ability to use her hands repetitively for the pushing and pulling of arm controls, the ability to occasionally lift and carry up to 20 pounds, and the ability to drive automotive equipment with only a mild restriction. These internal inconsistencies undermine the credibility of Dr. Hayes' opinion in the PCE form. . . . Nevertheless, the Administrative Law Judge finds that Dr. Hayes' opinions in the Heart Questionnaire are consistent with and supported by objective medical evidence contained in the record and that those opinions regarding the claimant's Class II cardiovascualar impairment classification under New York Heart

---

[18]See also Blake v. Massanari, 2001 WL 530697, *10 n.4 (S.D. Ala. Apr. 26, 2001); 20 C.F.R. § 404.1527(d)(2).  The Eleventh Circuit has repeatedly made clear that the opinion of a treating physician must be given substantial weight unless good cause is shown for its rejection.  See, e.g., Lamb v. Bowen, 847 F.2d at 703; Walker v. Bowen, 826 F.2d 996, 1000 (11th Cir. 1987); Sharfarz v. Bowen, 825 F.2d at 279-80; Schnorr v. Bowen, 816 F.2d 578, 581 (11th Cir. 1987); McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987); MacGregor v. Bowen, 786 F.2d at 1053; Wilson v. Heckler, 734 F.2d 513, 518 (11th Cir. 1984); and 20 C.F.R. § 404.1527(d)(2).

Association Functional Classification and her "slight" degree of limitation in her ability to perform work activity have bee[n] assigned determinative evidentiary weight.

\* \* \*

**The Administrative Law Judge is also unable to assign determinative evidentiary weight to Dr. Burch's opinions as set forth in her PCE form for many of the same reasons determinative evidentiary weight could not be given to the opinions in Dr. Hayes' PCE form**. First, **Dr. Burch's opinions in her PCE form are inconsistent with statements in a letter she submitted simultaneous to the PCE form on May 15, 2004.** In that letter, Dr. Burch stated that the limitations designed in the PCE form were based on the claimant's "joint pain." The doctor went on to state that the claimant's prognosis regarding her coronary artery disease was good with continued risk factor modification and she did not indicate that this condition was a factor in the limitations set out in the PCE form. Additionally, **Dr. Burch stated that the claimant only "occasionally" used narcotic medications for pain** and that those medications could cause some degree of sedation, thereby rendering the claimant unable to operate equipment, climb, or be around unprotected heights during those times. Since the evidentiary record documents, and Dr. Burch stated in her May 15, 2004 letter, that the claimant's "arthritis complaints" involve her hands, feet, knees, and lower back, **in order to justify the severe exertional and non-exertional limitations Dr. Burch assigned the claimant in the PCE form, the record would have to contain objective medical evidence of a continuous disorder of such severity as to produce disabling pain. The record contains no such evidence either in the form of diagnostic studies or clinical examination findings**. Dr. DiVittorio, the rheumatologist who examined the claimant in September, 2003, reported that the claimant had minimal findings on physical examination and that x-rays of her hands and feet were normal. Although it is true that Dr. DiVittorio diagnosed the claimant with rheumatoid arthritis, he labeled the claimant's condition as "probable low grade rheumatoid arthritis." A review of Dr. Burch's treatment notes reveals no clinical examination findings indicating an impairment causing severe pain and the doctor stated that the claimant only use[d] narcotic pain medication "occasionally." Therefore, **Dr. Burch's opinions that the claimant's "joint pain" limits her to essentially a less than full range of sedentary work activity and renders her unable to work 8 hours per day, 40 hours per week, lack an evidentiary basis**.

\* \* \*

(Tr. 30-31 (citations omitted) (emphasis added)).

With respect to Drs. Hayes and Burch, the ALJ properly weighed and discounted their opinions as conclusory, inconsistent with the overall evidence of record, based upon Plaintiff's self-reports, and not accompanied by objective medical evidence. First, Dr. Hayes' restriction that

18

Plaintiff was able to sit, stand and walk for only 4 hours during an 8 hour work day, was not consistent with his April 2004 findings that Plaintiff had only a Class II functional classification under the New York Heart Association classification system[19] (i.e., minimal objective medical findings of cardiac disease) and that her condition had only a slight degree of limitation on her ability to perform work activity.  See supra.  Additionally, Dr. Hayes' treatment notes provide no objective medical basis for his conclusory 4 hour sitting, standing and walking restriction.  Id.  Moreover, Dr. Hayes' restriction was inconsistent with the findings of Drs. Shaikh and Hayne, who found that Plaintiff had no significant physical limitations and was capable of performing the exertional demands of light work.  Id.  Further, Dr. Hayes did not offer any opinion regarding whether Plaintiff was totally and permanently disabled.  Id.

Dr. Burch's finding – that Plaintiff was limited to less than a full range of sedentary work activity because she could only stand or walk for 2 hours – was also inconsistent with her treatment records.  Id.  Dr. Burch's findings were clearly based upon Plaintiff's subjective complaints, rather than objective medical evidence, as none of her treatment notes confirm the severity described.  Id.  Moreover, while Plaintiff alleged disabling joint pain, Dr. Burch noted that Plaintiff only took narcotic pain medication occasionally.  Id.  Accordingly, the ALJ did not err by failing to assign controlling weight to the PCE findings of Drs. Hayes and Burch.  See, e.g., Jones v. Dep't of Health

---

[19]The New York Heart Association Classification ("NYHA") is a functional and therapeutic classification for prescription of physical activity for cardiac patients, comprising of the following:

| | |
|---|---|
| Class I: | No symptoms and no limitation of activities. |
| Class II: | Mild symptoms and slight limitation during ordinary activity. Comfortable at rest. |
| Class III: | Marked limitation in activity due to symptoms, even during less-than-ordinary activity. Comfortable only at rest. |
| Class IV: | Severe limitation. Experience symptoms even at rest. |

See www.americanheart.org/presenter.jhtml?identifier=330#class (Last visited 3/12/07).

and Human Services, 941 F.2d 1529, 1532-1533 (11th Cir. 1991); Edwards, 937 F.2d 580.

> **3.    Whether the ALJ erred by failing to find Plaintiff disabled pursuant to Medical-Vocational Guidelines Rule 201.12?**

Plaintiff contends that she meets the requirements of Rule 201.12 of the Grids, to be found disabled because she is closely approaching advanced age as she was born on June 25, 1952; has a high school level of education (12th grade); has unskilled PRW as a courier or clerk at the light exertional level and no transferable skills to sedentary work were identified; and has a maximum RFC limited to sedentary work as the result of severe medically determinable impairments based on the medical evidence of record (Dr. Hayes' PCE,[20] Dr. Hayes' Heart Questionnaire,[21] Dr. DiVittorio's September 2003 evaluation,[22] results of her April 2003 heart catheterization,[23] and Dr. Burch's narrative letter and PCE).[24]  Despite Plaintiff's argument, this case was not decided at step five, but rather, at step 4, where Plaintiff bore the burden of showing that she was unable to perform her PRW.

The Grids apply only when the individual is not engaging in SGA and her impairments prevent the performance of her vocationally PRW without consideration of vocational factors.  20 C.F.R., Pt. 404, Subpt. P, App.2, § 200.00; 20 C.F.R. §§ 404.1562, 416.962.  Here, the ALJ

---

[20]Finding that Plaintiff can only stand and walk for 4 hours per 8 hour workday, placing her below the level of light work as defined by SSR 83-10 (requiring standing/walking for 6 hours per 8 hour work day for light work). (Tr. 245).

[21]Finding that Plaintiff suffers from a mild coronary artery disease and coronary vasospasm, a diagnosis supported by a left heart catheterization and his finding that she has a New York Heart Association classification of II. (Tr. 246).

[22]Noting that Plaintiff suffers from coronary artery disease.  (Tr. 183).

[23]Finding that her heart catheterization indicated reduced left ventricular systolic function with evidence for inferoapical infarction, coronary disease involving the distal portion of the left anterior descending in a small caliber segment and coronary disease involving the obtuse marginal.  (Tr. 151-152, 154-155).

[24]Noting that Plaintiff had a history of hypertension, depression, and cervical cancer; discussing a recent myocardial infarction and coronary artery disease; and stating limitations caused by joint pain resulting from rheumatoid arthritis.  (Tr. 248-249).  The PCE restricted her to less than sedentary work.  (Id. at 249).

determined that Plaintiff retains the RFC to perform her PRW light work as a courier and construction industry clerk because she can perform that work as she actually performed it and as it is performed in the national economy. See supra. See, e.g., Jackson v. Bowen, 801 F.2d 1281, 1293-1294 (11th Cir. 1986). In so doing, the ALJ considered all of the relevant medical and non-medical evidence, including Plaintiff's testimony, disability reports, and other statements of record. Moreover, the ALJ was not required to rely upon the VE's testimony in response to hypothetical questions which were unsupported by the overall evidence. See, e.g., McKinney, 228 F.3d at 864-865. Once the ALJ found that Plaintiff could perform her PRW, the sequential evaluation process terminated. 20 C.F.R. § 404.1520, 416.920; Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002) (per curiam). Thus, Plaintiff's claim fails.

**V.      Conclusion**

For the reasons set forth, and upon consideration of the administrative record and memoranda of the parties, it is **RECOMMENDED** that the decision of the Commissioner of Social Security, denying her claim for disability insurance benefits and supplemental security income, is due to be **AFFIRMED.**

The attached sheet contains important information regarding objections to this Report and Recommendation.

**DONE** this the **13th** day of **March, 2007.**

                    /s/ Sonja F. Bivins
                    **UNITED STATES MAGISTRATE JUDGE**

21

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
AND FINDINGS CONCERNING NEED FOR TRANSCRIPT**

1.    **Objection**.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court. Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge. See 28 U.S.C. § 636(b)(1)(c); Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides, in part, that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

> A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.    **Opposing party's response to the objection.**  Any opposing party may submit a brief opposing the objection within ten (10) days of being served with a copy of the statement of objection. Fed. R. Civ. P. 72; SD ALA LR 72.4(b).

3.    **Transcript (applicable where proceedings tape recorded)**.  Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

/s/SONJA F. BIVINS
**UNITED STATES MAGISTRATE JUDGE**